```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WAGNER CARABALLO GONZALEZ,

                              Petitioner,

       -against-                                          25 Civ. 8250 (AT)

WILLIAM P. JOYCE, IN HIS OFFICIAL                         ORDER
CAPACITY AS DEPUTY FIELD OFFICE
DIRECTOR OF NEW YORK, IMMIGRATION
AND CUSTOMS ENFORCEMENT; KRISTI
NOEM, IN HER OFFICIAL CAPACITY AS
SECRETARY OF HOMELAND SECURITY;
AND PAMELA BONDI, IN HER OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF THE
UNITED STATES,

                              Respondents.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/19/2025_

ANALISA TORRES, District Judge:

Petitioner, Wagner Caraballo Gonzalez, a Colombian citizen seeking asylum in the United States, petitions for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). *See generally* Am. Pet. (the "Petition"), ECF No. 9. Gonzalez contends that his Fifth Amendment right to due process was violated when he was detained on October 6, 2025, after attending a hearing in a New York City immigration court. *See id.* ¶¶ 2, 5. Gonzalez seeks immediate release from custody. *Id.* ¶ 6. For the reasons stated below, the Petition is granted.[1]

## BACKGROUND

On July 25, 2023, United States Customs and Border Protection ("CBP") officers first encountered Gonzalez along the Mexico-United States border near El Paso, Texas. Harrington Decl.

---

[1] Having reviewed the Petition, the materials filed in support thereof, and Respondents' opposition and accompanying declaration and exhibits, the Court finds that the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. 28 U.S.C. § 2243 (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require").

¶ 4, ECF No. 17.  Gonzalez told the officers he was a citizen of Colombia and did not have legal documents to enter the United States.  *Id.* ¶¶ 4–5.  Pursuant to an expedited removal order under 8 U.S.C. § 1225(b)(1), Gonzalez was removed from the United States on September 4, 2023.  *Id.* ¶ 6; Mem. at 4, ECF No. 18.  Prior to his removal, the Department of Homeland Security ("DHS") provided Gonzalez with a Notice to Alien Ordered Removed/Departure Verification, or a Form I-296, which prohibited him from entering the United States for a period of five years from his removal because he was found to not have the proper legal documents to enter the United States under 8 U.S.C. § 235(b)(1).  Harrington Decl. ¶ 6.

On October 29, 2023, CBP officers encountered Gonzalez for a second time near El Paso, Texas, where he, again, told officers that he was a citizen of Colombia without legal documents to enter the United States.  *Id.* ¶ 7.  On October 30, 2023, CBP officers served Gonzalez with a Notice to Appear, the charging document that initiates removal proceedings, which charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled.  *Id.* ¶ 8.  The next day, officers released Gonzalez on his own recognizance, and he was ordered to appear in a Phoenix immigration court on September 17, 2024.  *Id.* ¶ 9; Mem. at 4–5.  The Phoenix hearing was subsequently adjourned to May 3, 2024.  Harrington Decl. ¶ 9.

When Gonzalez did not appear on May 3, 2024, the Phoenix immigration court issued an *in absentia* order of removal, but Gonzalez later filed a motion to reopen removal proceedings, which was granted on March 17, 2025.  *Id.* ¶ 10.  On March 25, 2025, Gonzalez's case was transferred to Manhattan immigration court at 290 Broadway after he moved to New York with his wife and two young children, aged two and nine years old.  *Id.* ¶ 12; Am. Pet. ¶ 55.  On July 17, 2024, his wife included him as her spouse on her application for asylum.  Am. Pet. ¶ 45.  On March 31, 2025,

Gonzalez filed his own asylum application with the Manhattan immigration court, in which he detailed his fear of removal to Colombia. *Id.* ¶ 46.

On June 23, September 8, and October 6, 2025, Gonzalez attended scheduled immigration court hearings at 290 Broadway in Manhattan. *Id.* ¶ 47–48. During the October 6 hearing, the immigration judge scheduled Gonzalez for a merits hearing on December 2, 2025, during which his asylum application would receive a final adjudication. *Id.* ¶ 49. When Gonzalez left the courtroom at 290 Broadway, however, "he was immediately apprehended by masked ICE officers who did not disclose their names or badge numbers." *Id.* ¶ 50. Gonzalez contends that the ICE officers did not inform him why he was being arrested and showed him an "unsigned arrest warrant that . . . recited there was probable cause for his removal because he was in [ongoing] removal proceedings." *Id.* ¶ 50; Ex. C, Arrest Warrant, ECF No. 9-3.

Gonzalez alleges that his arrest and detention were made pursuant to an ICE policy, initiated in May 2025, to "indiscriminately arrest[] noncitizens who attend immigration court hearings with "ICE officers, waiting in lobbies, hallways, and elevator wells in Immigration Court buildings[,] [to] arrest individuals leaving their hearings." Am. Pet. ¶ 52. Gonzalez claims that he was provided neither an opportunity to demonstrate that he was not a danger to the community or a flight risk nor an individualized assessment as to whether a change in his custody status was warranted. *Id.* ¶ 51.

After his October 6, 2025 arrest, Gonzalez was detained at an ICE processing facility at 290 Broadway, and during the first day of his detention, Gonzalez's wife, as his next friend, filed a *pro se* habeas petition initiating this action. *See* ECF No. 1.[2] That same day, ICE transferred Gonzalez to

---

[2] Although the Petition concerns urgent claims and requests immediate relief, it was not filed as an application for emergency relief pursuant to Rules 13.18 and 13.19 of the United States District Court for the Southern District of New York's ECF Rules and Instructions, and it was not labeled as an emergency habeas petition. Accordingly, the case was wheeled out in the ordinary course, and the case designation to the undersigned was not entered until October 7, after Gonzalez had already been transferred. *See* October 6, 2025 ECF Entry "Case Designated ECF" (entered on October 7, 2025); *see also* Harrington Decl. ¶ 15 (noting that ICE transferred Gonzalez to the Delaney Hall Facility in New Jersey at approximately 12:30 a.m. on October 7.) Respondents do not dispute that Gonzalez's wife filed the original petition, *see* ECF No. 1, on his behalf as his next friend while he was located in this District, *see* Mem. at 5.

3

26 Federal Plaza for processing.  Mem. at 5.  On October 7, Respondents transferred Gonzalez to the Delaney Hall Detention Facility in Newark, New Jersey, where he remains confined.  Am. Pet. ¶¶ 56–57; Mem. at 5.  Gonzalez's final merits hearing, which was previously scheduled before an immigration judge at 290 Broadway for December 2, 2025, was vacated, and the venue of Gonzalez's immigration proceedings was transferred to a Newark immigration court, before Judge Ramin Rastegar, with a final merits hearing set for October 20, 2025.  Am. Pet. ¶ 57.

On October 9, 2025, counsel appeared on behalf of Gonzalez, ECF No. 8, and filed an amended petition, *see generally* Am. Pet.  On October 15, Respondents filed their response.  *See generally* Resp., ECF No. 16.  On October 16, Gonzalez filed his reply.  Reply, ECF No. 19.

## DISCUSSION

"[T]he Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).  "Noncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed."  *Id*.  "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review."  *Id.*

"The Second Circuit has held that the *Mathews v. Eldridge*[, 424 U.S. 319 (1976),] balancing test applies when determining the adequacy of process in the context of civil immigration confinement."  *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025) (citing *Velasco Lopez*, 978 F.3d at 851).  "The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail."  *Id.* (citing *Mathews*, 424 U.S. at 335).

4

Gonzalez does not contend that greater "judicial-type procedures must be imposed upon [the] administrative action[s]" of ICE than those already required by law; he argues that the agency is obligated to comply with the procedures already in place, and its failure to do so amounts to a complete and arbitrary denial of due process. *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 348); *see also* Am. Pet. ¶¶ 51. Gonzalez argues —and Respondents do not dispute—that under 8 U.S.C. § 1226(a), ICE must make an individualized determination as to whether a noncitizen "pose[s] a danger to property or persons," or is unlikely "to appear for any future proceeding." 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8); *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); Am. Pet. ¶¶ 4, 63; Mem. at 14; *see also Valdez*, 2025 WL 1707737, at *4 ("In the context of revocation of civil release, an individual whose release is sought to be revoked is entitled to due process such as notice of the alleged grounds for revocation, a hearing, and the right to testify at such a hearing." (citations omitted)). It is undisputed that no such determination was made here. Instead, Gonzalez was "immediately apprehended by masked ICE officers" following his scheduled immigration court appearance. Am. Pet. ¶ 50. The ICE officers "showed him an unsigned arrest warrant" that "recited there was probable cause for his removal because he was in removal proceedings." *Id; see also* Ex. C, Arrest Warrant, ECF No. 9-3 . Gonzalez alleges that his arrest and detention were made pursuant to a new ICE policy to "indiscriminately arrest[] noncitizens who attend immigration court hearings" without an individualized assessment as to whether detention was warranted. Am Pet. ¶ 52. [3]

As in *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931 (S.D.N.Y. July 13, 2025) and *Kelly v. Almodovar*, No. 25 Civ. 6448, 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025), Respondents here do not contend that ICE gave Gonzalez an opportunity to be heard or prior notice,

---

[3] The declaration submitted by Respondents claims that on June 12, 2024, Gonzalez was arrested in Florida for operating a motor vehicle without a valid license, but that the disposition of the charge is "currently unknown." Harrington Decl. ¶ 11. Respondents do not contend, however, that this prior arrest was considered in any way in their decision to detain Gonzalez on October 6, nor do they claim to have considered this arrest in making any individualized assessment of Gonzalez's dangerousness or flight risk. *See generally* Mem.

nor do they deny the existence of the new detention policy described in the Petition and supporting submissions. *See generally* Mem. Neither do Respondents argue that Gonzalez poses a risk of flight or a danger to the community. *See id.* at 14–16.

The undisputed facts are, therefore, that ICE summarily detained Gonzalez pursuant to its policy of arbitrary detention without affording him notice or opportunity to be heard. There is, therefore, no doubt that "Respondents' ongoing detention of [Gonzalez] with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights." *Valdez*, 2025 WL 1707737, at *4. "In light of the deprivation of [his] liberty, formerly granted and approved by Respondents, the absence of any deliberative process prior to, or contemporaneous with, the deprivation, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only vehicle for relief. It is, in essence, the most appropriate remedy." *Lopez v. Sessions*, No. 18. Civ. 4189, 2018 WL 2932726, at *15 (S.D.N.Y. June 12, 2018).

Despite the obvious constitutional violations, Respondents ask the Court to deny the writ of habeas corpus on three grounds. Their arguments are without merit.

First, Respondents incorrectly seek to justify Gonzalez's detention under 8 U.S.C. § 1225(b)(1). Mem. at 6–7. That provision permits immigration officers to order a noncitizen removed from the United States "without further hearing or review unless" the noncitizen "indicates an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1). It applies to an assessment of individuals at the United States' borders and ports of entry for individuals "seeking admission" into the country, not those "already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Although on September 4, 2023, Gonzalez was removed from the United States pursuant to § 1225(b), following his second encounter with CBP officers, it is undisputed that he was released on his own recognizance pursuant to 8 U.S.C. §1226. *See* Mem. at 4; Reply at 5. It is further undisputed that Gonzalez sought asylum in the United

6

States, first on July 17, 2025, through his wife's application for asylum, then independently through his own asylum application, submitted on March 31, 2025. *See* Am. Pet. ¶¶ 45–46; *see generally* Mem. (failing to discuss Gonzalez's asylum application). To the extent Respondents argue that Gonzalez's detention is warranted because his original removal under § 1225(b) prohibited him from entering the country for a period of five years, it is undisputed that upon his second entry into the country, CBP officers released him on his own recognizance pursuant to § 1226 and similarly arrested him purportedly pursuant to that same statutory provision. *See* Am. Pet. ¶¶ 44, 81; Ex. C., Arrest Warrant, ECF No. 9-3; Mem. at 6–7; Resp. Ex. 5, ECF No. 16-5; Reply at 4–6. Moreover, because Gonzalez has already lived in the United States for over two years since his release, § 1225 no longer applies to him. *See Jennings*, 583 U.S. at 287; *see also Lopez Benitez v. Francis*, No. 25 Civ. 5937, 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025) ("[A] noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226."). The Court holds that Gonzalez is "not subject to mandatory detention as a noncitizen 'seeking admission' to the country under 8 U.S.C. § 1225, but rather may be subject to detention only on a discretionary basis under § 1226." *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831, at *3 (S.D.N.Y. Aug. 19, 2025).

To the extent Respondents claim Gonzalez's detention was made pursuant to DHS's discretionary authority, there is no valid exercise of DHS's discretion, where "there is nothing to suggest that DHS exercised any discretion *at all* in detaining [Gonzalez] . . . in contravention of the basic procedural requirements of § 1226(a)." *Lopez Benitez*, 2025 WL 2371588, at *11 (emphasis in the original). And there is no dispute that ICE is required to adhere to the basic principles of due process when exercising its discretion under § 1226(a). *Velasco Lopez*, 978 F.3d at 850–51.

Second, Respondents argue that, as a noncitizen, Gonzalez is not afforded due process under the Fifth Amendment. *See* Mem. at 10–13. Not so. Gonzalez is not, as Respondents purport, an

7

"alien on the threshold of initial entry" whose due process is outlined only by statute, Mem. at 11 (citation omitted), but rather a noncitizen who has been living in the United States since October 30, 2023, during the pendency of his immigration proceedings, *see* Am. Pet. ¶ 1; Mem. at 4. Accordingly, "the Fifth Amendment entitles [Gonzalez] . . . to due process of law" regardless of whether his "presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez*, 978 F.3d at 850. Respondents have denied Gonzalez such due process here.

Third, Respondents contend that Gonzalez is not entitled to release because he has not exhausted his administrative remedies. Mem. at 15–16. This argument also fails. The very nature of the Petition is that Gonzalez was detained pursuant to a policy that is defined by its systematic denial of the administrative remedy that Respondents urge Gonzalez to pursue. *See Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (Sotomayor, J.) (as amended) (judicial exhaustion may be excused when "available remedies provide no genuine opportunity for adequate relief" or exhaustion "would be futile" (internal citation omitted)). Respondents suggest that any constitutional violation could be cured if Gonzalez requested a custody re-determination hearing before an immigration judge—a hearing that occurs after ICE makes its initial decision to detain. 8 C.F.R. § 236.1(d). Such a hearing is no substitute for the requirement that ICE engage in a "deliberative process prior to, or contemporaneous with," the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause. *Lopez*, 2018 WL 2932726, at *15; *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment. *Velasco Lopez*, 978 F.3d at 851–52 (emphasizing that, under the *Mathews* balancing test, a petitioner's liberty interest is "the most significant liberty interest there is"); *Valdez*, 2025 WL 1707737, at *3–4. Respondents' suggestion that Gonzalez has an adequate

8

remedy available to him rings hollow.  Moreover, courts may excuse administrative exhaustion where the petitioner "has raised a substantial constitutional question," *Beharry*, 329 F.3d at 62 (citation omitted), as Gonzalez has here, *see Valdez*, 2025 WL 1707737, at *1 n.1.  Gonzalez is, therefore, appropriately excused from exhausting administrative remedies.

Because "Respondents' ongoing detention of [Gonzalez] with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates his due process rights," *Valdez*, 2025 WL 1707737, at *4, the Petition must be granted.

## CONCLUSION

For the reasons stated above, the Petition, ECF No. 9, is GRANTED.  Respondents are ORDERED to immediately release Gonzalez from custody.

By **October 20, 2025**, Respondents shall certify compliance with this Order by a filing on the docket.

SO ORDERED.

Dated: October 19, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge